IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rodney Sansbury, | ) | |
| | ) | Civil Action No. 5:14-cv-01115-RMG-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Southern Health Partners; Nurse Shelton, | ) | |
| LPN; Cpl JC Miers, BDG #425; T. Van | ) | |
| Doran; Captain Darling, #62; Lt. Branch; | ) | |
| and Captain Taylor, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a former inmate with the Dorchester County Detention Center ("DCDC"), filed this 42 U.S.C. § 1983 action alleging Defendants violated his constitutional rights. Since filing his Complaint and Amended Complaint, Plaintiff has retained counsel. *See* ECF No. 52. This matter is before the court on Defendants' Motions for Summary Judgment. ECF Nos. 79, 80. Plaintiff filed Responses in Opposition to Defendants' Motions for Summary Judgment on February 17, 2015. ECF Nos. 84, 85. On February 27, 2015, Defendants replied to Plaintiff's Responses. ECF Nos. 86, 87. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motions are dispositive, a Report and Recommendation is entered for the court's review.

I.      Background

Plaintiff was previously incarcerated at the DCDC and began serving a 90-day sentence on February 18, 2014, for "driving under suspension 3rd." ECF No. 1 at 3. On March 25, 2014,

1

Plaintiff filed the initial lawsuit alleging that he was discriminated against because he was not allowed to work kitchen detail because of his HIV medical condition. ECF No. 1.

In his Complaint, Plaintiff maintains that on February 19, 2014, he requested that he be placed on work detail so that he could reduce his sentence time through earned credits. *Id.* at 3; ECF No. 1-1 at 4-5. On February 20, 2014, Plaintiff was notified that his "application for work [was] being reviewed, [and] not to submit any more work requests." *Id.* Plaintiff maintains that on February 21, 2014, he was called in for a physical examination. ECF No. 1 at 3. Plaintiff represents that Nurse Brandy examined Plaintiff and indicated to him that he was in good health to work. *Id.* Plaintiff further represents that:

> We then talked briefly of my HIV, how long I've had it and the Affordable Care Act. At this time I noticed a stick-em on my file stating no kitchen work allowed. I enquired as to why I couldn't work in kitchen she stated that "the order came from the head nurse LPN Shelton" I then stated that my health was perfectly fine and that my CD4 count was above 600 and my viral load was undetectable. She stated that she had no idea why nurse Shelton put that on my file. I further explained that I am a cook by trade and that I've been cooking for over 20 years.

*Id.* Plaintiff alleges that the following week he witnessed five inmates be placed on luncheon detail. *Id.* at 4. After a sixth person was assigned work detail, Plaintiff maintains that he asked Defendant Miers why he had not been assigned to a work detail, and Defendant Miers responded that he did not know but understood that Plaintiff was not allowed kitchen duty due to his HIV status. *Id.* Plaintiff maintains that he responded by stating that the facility is run by SCDC protocol, and SCDC has discontinued the practice of discriminating against HIV inmates. *Id.*

Thereafter, Plaintiff went to speak with Defendant Shelton and asked her about his medications. *Id.* Plaintiff alleges that Defendant Shelton asked him if he could get more medications because he had two refills left on the medications that Plaintiff's wife brought to him. *Id.* Plaintiff maintains that he told Defendant Shelton he did not know, and Defendant

2

Shelton responded that she would call Plaintiff's prescription into the CVS pharmacy. *Id.* Plaintiff maintains that Defendant Shelton then told him that she would arrange for CVS to send his medications to his home, and his wife could then bring them in again. *Id.* at 4-5. Plaintiff alleges that he expressed concern to Defendant Shelton over how he would get his medication because he wife was away. *Id.* at 5. Plaintiff maintains that on March 1, 2014, he was called to return to medical to speak with Nurse Amanda and she asked that Plaintiff sign a release form for his medical records from MUSC (Medical University of South Carolina). *Id.* Plaintiff represents that he consented to the release. *Id.*

Plaintiff maintains that on March 8, 2014, he began work as a "dorm worker," which consisted of 15 minutes of work per day. *Id.* However, Plaintiff still preferred to work in the kitchen and again asked Defendant Shelton why he could not work there. *Id.* Plaintiff maintains that he "was told by [Defendant] Shelton that [he] can't [work] due to [his] HIV status." *Id.* At this point, Plaintiff alleged that he proceeded to write to the courts. *Id.* Plaintiff alleges that on March 13, 2014, he wrote another request to Defendant Shelton asking her to clarify why he could not work in the kitchen. *Id.*

Plaintiff maintains that he then met with Defendant Shelton, and she stated to him that she never denied him work due to his HIV—that she did not know why Plaintiff was not allowed to work in the kitchen. ECF No. 1 at 6. On March 6, 2014, Plaintiff alleges that he requested work anywhere in the jail if kitchen work was unavailable. *Id.* Then, on March 13, 2014, Plaintiff maintains that he wrote to Defendant Miers requesting kitchen duty again and stating that dorm work was only 10-15 minutes a day. *Id.* Plaintiff alleges that Defendant Miers declined to respond to his request. *Id.*

3

Plaintiff also complains about the lack of confidentiality concerning his medical condition. ECF No. 1 at 7. Specifically, Plaintiff maintains that he was escorted to medical on several different occasions, "and each time [he] was subjected to shame as the nurse on duty blurted out all [his] medical issues directly in front of the escorting officer." *Id.* Plaintiff contends that DCDC did not honor his rights regarding privacy on medical issues by asking him personal medical questions while an officer was within three feet of the conversation. *Id.*

In his request for relief, Plaintiff requests that "the courts make DCDC comply with the directives of the DOJ in regard to HIV inmates [and] have oversight of the implementation of such changes." ECF No. 1 at 8. Additionally, Plaintiff asks that the courts instruct "DCDC to change handbook and DCDC guidelines to reflect such changes [and] that the courts withhold federal funding of DCDC if such changes are not implemented within 30 days of this action." *Id.* Plaintiff seeks attorney's fees if he "is forced to acquire outside help upon his release from DCDC." *Id.* Plaintiff seeks $400,000 for pain and suffering and $200,000 in punitive damages. *Id.* Finally Plaintiff "pray[s] that this honorable court investigate this institutions' practice towards HIV inmates and grant whatever relief deemed just and proper under the laws of the United States of America." *Id.*

On April 8, 2014, Plaintiff filed an Amended Complaint. ECF No. 10. There, Plaintiff added Lt. Branch and Captain Taylor as additional Defendants to the lawsuit and expressed concern about whether his inmate grievance was received by the clerk's office. ECF No. 10-1. Additionally, Plaintiff maintains that his outgoing mail "sat of the director's desk for two days thus leaving the possibility for tampering in [Plaintiff's] mind." *Id.* In his Motion to Amend, Plaintiff alleged that he attempted to mail his § 1983 action to the federal courts on March 19, 2014, and on March 20, 2014, but his Complaint had not been mailed by Defendant Taylor. ECF

No. 10 at 1. Additionally, Plaintiff maintains that he was "called to director's office and confronted hostilely by Capt. Taylor and Major Van Doran whom tried to dissuade [him] from filing said suit. That said suit was not mailed until 3-21-14 two whole days later." *Id.* Plaintiff represents that on March 21, 2014 he was "appeased by being allowed to work in kitchen as part of dissuasion for Plaintiff to not file suit." *Id.* On March 22, 2014, Plaintiff maintains that he was fired from kitchen and told he was fired for trying to change the way things were done." *Id.* Also on March 22, 2014, Plaintiff maintains that Defendant Branch entered kitchen after Plaintiff had left and informed all kitchen inmates that she was happy Plaintiff was fired and "further stated that she did not want Plaintiff in kitchen because he had HIV." ECF No. 10 at 1-2. Further, Plaintiff alleges that Defendant Branch "had all inmates in kitchen write statements on the Plaintiff to substantiate Plaintiff's termination." *Id.* at 2. Plaintiff attached grievance forms, grievance responses, prisoner request forms, request response forms, and certain policy excerpts to his Amended Complaint. *See* ECF Nos. 10-2; 10-3. These motions follow.

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.    Analysis

A.  Health Care Defendants' Motion for Summary Judgment

Defendants Southern Health Partners, Inc. and Heather Shelton, LPN ("Southern Health Defendants") move for summary judgment and argue that Plaintiff cannot establish any basis for recovery under § 1983. ECF No. 80-2 at 5-6. Specifically, Southern Health Defendants argue that Plaintiff was provided with proper medical care at all times, and Plaintiff cannot establish any violation related to work assignments. *Id.* at 6-12. Additionally, Southern Health Defendants maintain that Plaintiff has no evidence or legal basis for his breach of confidentiality claim and no independent basis for recovery against them. *Id.* at 12-14. Finally, Southern Health Defendants argue that Plaintiff has no evidence of physical damages. *Id.* at 15.

In Response to the Motion, Plaintiff recites several facts contained in his Complaint. ECF No. 85 at 1-3. In his legal argument section Plaintiff maintains that if construed in the light most favorable to him, "it is clear that Defendants did not follow their own procedures and protocols." *Id.* at 4. Additionally, Plaintiff asserts that his testimony demonstrates that Defendants did not allow him to work in the kitchen because of his HIV status. *Id.* Plaintiff maintains that his civil rights were violated when Defendants allowed an escort to be present when Plaintiff met with medical personnel. *Id.* Finally, Plaintiff maintains that "[p]risoners (sic) rights should be confidential because of their medical status, especially where there is no danger of transmission." *Id.* at 4-5. Other than these arguments, Plaintiff does not specifically address the remaining arguments made by Southern Health Defendants. The undersigned will address each Southern Health argument in turn.

6

1. Basis for § 1983 Claim-Proper Medical Care

Southern Health Defendants argue that Plaintiff acknowledges and does not dispute that his HIV was properly treated at the DCDC and that Plaintiff received appropriate HIV medications. ECF No. 80-2 at 6. Additionally, they maintain that Plaintiff's condition did not deteriorate in any manner and his sole complaint specifically regarding medical treatment pertains to the medical treatment he received for a cyst on his face. *Id.* Southern Health Defendants argue that a cyst is not a serious medical condition and medical attention was provided to Plaintiff. *Id.* Further, they contend that medical records demonstrate that Plaintiff received effective treatment. *Id.* at 7.

Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[d]eliberate indifference. . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.  In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Id.*   The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).  A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

7

Here, Plaintiff admits to receiving medical treatment on numerous occasions and receiving medications for certain illnesses. ECF No. 80-3. In his deposition, when asked what medical complaints he was asserting in his lawsuit, Plaintiff testified:

> From a care standpoint, yes, there is one issue—I had a boil right here on my head. I went to the nurse and she just prescribed me a pill. She didn't touch me. She didn't do my vitals. She didn't take my temperature. She didn't do anything. There was no diagnosis about the problem.

ECF No. 80-5 at 12. However, Plaintiff admits that he was seen by medical staff for the boil and prescribed medication for it. *Id.* Plaintiff testified: "I should have been evaluated, took my vitals. That is always a prerequisite to any doctor visit, for as long as I have been going." *Id.* at 13. Additionally, Plaintiff testified that after about a week, the boil healed. *Id.* at 13.

Here, Plaintiff disagrees with Defendants' course of medical treatment concerning the boil on his head. However, Plaintiff's disagreement with medical staff regarding his treatment does not rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. at 106 ("[A] complaint that a physician had been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). As the Fourth Circuit Court of Appeals articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (internal citations omitted).

8

The undersigned finds that Plaintiff's Complaint fails to contain facts that, if true, demonstrate that Southern Health Defendants knew of and disregarded Plaintiff's serious medical needs. Accordingly, to the extent that Plaintiff raised a cognizable medical indifference claim, the undersigned recommends that Plaintiff's medical indifference claim be denied and dismissed.

### 2.  Basis for § 1983 Claim-Work Assignment Discrimination

Southern Health Defendants maintain that Plaintiff's claim that medical defendants violated his rights in not medically approving his first work assignment for kitchen duty— allegedly because he had HIV—is not a viable 1983 claim. ECF No. 80-2 at 8-11. Specifically, Southern Defendants argue that "[w]hile a prisoner's earned work credits that are taken away from him could form the basis of a constitutional deprivation, the opportunity to work and to earn credit does not." *Id.* at 9. Furthermore, Southern Defendants maintain that to the extent Plaintiff raised a cognizable discrimination claim, this claim must also fail because Plaintiff cannot present evidence that medical defendants treated him differently or that there was purposeful discrimination. *Id.* at 9-10.

### a.  Constitutional Right to Work Kitchen Detail

Southern Health Defendants argue that prisoners do not have a right to any job in prison, much less a specific one. *Id.* at 8-9. The undersigned agrees.

Prison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate. *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978). Southern Health Defendants are correct that Plaintiff does not have a property interest in a prison job. *See e.g.*, *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974) (holding that the opportunity to earn good-time or work credits is not a constitutionally

9

established liberty interest); *Williams v. Farrior*, 334 F. Supp. 2d 898, 903–904 (E.D. Va. 2004); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 n.3 (10th Cir. 1999) (noting that an inmate has no property interest in his or her prison job); *Miller v. Benson*, 51 F.3d 166, 170 (8th Cir. 1995); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982) ("Any expectation that [plaintiff] might have had of keeping his prison job does not amount to a property or liberty interest."); *James v. Jackson*, No. 08–144, 2009 WL 291162, at * 8 (D.S.C. Feb. 4, 2009)("[I]nmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated"); *Tyler v. Eagleton*, No. 9:13-3181-MGL, 2014 WL 4702576, at *7 (D.S.C. Sept. 19, 2014)(finding inmates have no constitutional right to a prison job). Based on the clear precedent, Plaintiff does not have a liberty or property interest in a prison job under the Due Process Clause. *See Altizer*, 569 F.2d at 813 ("[A]ppellant was not denied any constitutional right by the action of the prison administrators in removing him, without a hearing, from assignment to the inmate advisor program".). Accordingly, to the extent Plaintiff raises a constitution due process violation, the undersigned recommends dismissing the claim.

### b. Discrimination Claim Related to Work Assignment

Southern Health Defendants maintain that to the extent Plaintiff has raised a discrimination claim under the equal protection clause, this claim must also fail. ECF No. 80-2 at 9.

Plaintiff's cause of action is more akin to an equal protection claim. *See Johnson v. Knable*, 862 F.2d 314 (4th Cir. 1988) (holding an inmate's equal protection rights may have been violated where plaintiff alleged that "he was discriminated against in being denied the work assignment because of the statement that he was a homosexual"); *Cunningham v. Drew*, No.

10

9:12-cv-2596-RMG, 2013 WL 6834599, at *1 (D.S.C. Dec. 23, 2013) *aff'd,* 570 F. App'x 323 (4th Cir. 2014) ("[E]ven absent this right or property interest, one may have an equal protection claim if they are singled out for arbitrary and irrational treatment."). The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall. . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The purpose of the Clause is to keep "governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). When asserting an equal protection claim, to survive summary judgment, a plaintiff must first have evidence to demonstrate that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and, if so, the court must then determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Cunningham*, 2013 WL 6834599, at *2 (citing *Veney v. Wyche,* 293 F.3d 726, 730–32 (4th Cir. 2002)).

Southern Health Defendants maintain that Plaintiff's discrimination claim fails because inmate with HIV "are not similarly situated to other inmates." ECF No. 80-2 at 9. Therefore, under this proposition, Plaintiff would fail the threshold test. The cases making this holding have specifically held that "inmates with HIV/AIDS are not similarly situated to other prisoners, the Equal Protection Clause is not violated *when inmates are segregated because of their HIV-status*." *Moore v. Ozmint*, No. 3:10-3041-RBH, 2012 WL 762460, at *11 (D.S.C. Feb. 16, 2012) *report and recommendation adopted*, No. CA 3:10-3041-RBH, 2012 WL 762439 (D.S.C. Mar.

6, 2012) (emphasis added); *see also Werts v. Greenwood County Detention Center,* No. 4:08–1852–TLW–TER, 2008 WL 5378251 (D.S.C. Dec. 23, 2008). Based on these holdings, the court could find that Plaintiff's discrimination claim fails because Plaintiff is not similarly situated to other prisoners.

Even if Plaintiff can show that he is similarly situated, Plaintiff would still have to put forth some evidence of purposeful discriminatory intent. Plaintiff attaches portions of his deposition testimony as a Response to Southern Health Defendants' Motion. ECF No. 85-1. There, he testified that Defendant Miers informed him that "they do not allow HIV inmates to work in the kitchen." *Id.* at 5. During his deposition, Plaintiff agreed that an Exhibit, dated March 3, 2014, was the response he received from the grievance Plaintiff submitted concerning the work detail. *Id.* Plaintiff acknowledged that "this response says is that work details are a privilege, and that you were approved to work on February 19th, however, Medical would not approve you to work and the reason is unknown to us, but you will have to take that up with Medical." *Id.* Additionally, Plaintiff testified that he "was assigned to the dorm." *Id.* at 7. However, Plaintiff testified:

> I was not doing any work because they had three other people assigned to the dorm and they were doing the work, and they weren't allowing me to go out and clean up lockup; clean up anything. They were keeping me right there isolated. I did not leave that cell again after I talked to Captain Van Doran and I got removed from the kitchen.

*Id.*

Assuming Plaintiff's testimony is enough to demonstrate purposeful discriminatory intent, which the undersigned does not expressly find, Southern Health Defendants rebut Plaintiff's allegations by asserting that lack of medical compliance was why Defendant Shelton disapproved Plaintiff for work on February 20, 2014. ECF No. 80-2 at 10. Southern Health

12

Defendants attach Defendant Shelton's affidavit in support of their Motion. ECF No. 80-1. There, Defendant Shelton avers that on February 18, 2014, she saw Plaintiff and conducted a brief medical screening and completed a form entitled "Medical Staff Receiving Screening Form." *Id.* at 1; 7. On the form, Defendant Shelton indicated that Plaintiff was taking medications for HIV, that he had last taken his medications on February 17, 2014, and that he stated he was out of his medications. *Id.* Defendant Shelton further attests that the following day she performed a full examination of Plaintiff, and he indicated that he had HIV and was taking a variety of medications. ECF No. 80-1 at 1; 8. Defendant Shelton further represents that Plaintiff's family brought in the outside medications he had been taking, so he did not arrive at the jail with any medications. ECF No. 80-1 at ¶ 4. Further, Defendant Shelton attests that the HIV medication brought in by Plaintiff's family "had been filled almost a year earlier, on March 15, 2013, and was nearly full, even though it was supposed to be a 30-day supply." *Id.* Even though Plaintiff reported he was current on his medications, based on the pill bottle, it appeared to Defendant Shelton that "the fact that his pills were from 2013 indicated that he may not have been." *Id.* Defendant Shelton attests that she "decided to try and obtain a release for [Plaintiff's] outside medical records in an effort to determine the status of his treatment prior to his arrest." *Id.*

Defendant Shelton avers that she received a form requesting medical approval for Plaintiff to work in a kitchen assignment on February 20, 2014. *Id.* at ¶ 6. Defendant Shelton represents that she did not clear him for work at that time because of her outstanding questions regarding whether Plaintiff was current on his HIV medication. *Id.* Defendant Shelton attests that—contrary to Plaintiff's allegations that she simply did not clear him because he had HIV— she "needed to ensure he was receiving [the medication] prior to his being cleared for any work."

13

*Id.* at ¶ 7. Therefore, Defendant Shelton "denied the request at that time in an effort to protect [Plaintiff's] health." *Id.* Moreover, Defendant Shelton represents:

> This position would have been the same regardless of the job assignment in the request or even the medical condition at issue. We would be concerned about any detainee's physical ability to work if he/she had an illness requiring treatment (whether it be HIV, a heart condition, or diabetes, etc.), and the medications prescribed to treat it potentially had not been being taken.

*Id.* at ¶ 8. Defendant Shelton attests that she cleared Plaintiff for work on March 6, 2014, because at that time, she had been administering Plaintiff's HIV medications for two weeks. *Id.* at ¶ 9. Therefore, Defendant Shelton avers that on the later date of March 6, 2014, there was no longer a question about whether Plaintiff had been taking his medications as prescribed. *Id.* Additionally, Defendant Shelton represents that she had no involvement in where Plaintiff was assigned work. *Id.* at ¶ 10. Rather, Defendant Shelton is only tasked with either approving or disapproving "an assignment from the Detention Center as given to [her.]" *Id.*

Assuming Plaintiff has made a threshold showing of unequal treatment and discriminatory intent, Southern Defendants have offered a legitimate penological interest for denying his job placement. *Cunningham*, 2013 WL 6834599, at *2 (holding that even if plaintiff has shown evidence of unequal treatment, "the prison job placement policy in question was implemented for security purposes, a legitimate penological interest, and had nothing to do with Plaintiff individually"); *Slade v. Hampton Roads Reg'l Jail*, 303 F. Supp. 2d 779, 782 (E.D. Va. 2004) *aff'd*, 407 F.3d 243 (4th Cir. 2005) (citing *Shaw v. Murphy,* 532 U.S. 223 (2001)) ("[E]ven if the court were to find disparate treatment, there is no equal protection violation unless that disparate treatment is not 'reasonably related to legitimate penological interests.'"). Here, Plaintiff was not approved a work detail based on Defendant Shelton's belief that Plaintiff was not current on his medications. It was Defendant Shelton's policy to not approve any inmate who

was not current on medications for work, and protecting inmates' health serves a legitimate penological interest. The actions taken "had nothing to do with the Plaintiff individually, or with any attempt to single Plaintiff out for separate and unequal treatment from other similarly situated inmates." *Cunningham*, 2013 WL 6834599, at *8.

Therefore, Southern Health Defendants have presented the court with a rational, non-discriminatory reason for any alleged unequal treatment. If the court determines that any disparate treatment occurred, the undersigned recommends finding that it was reasonably related to a legitimate penological interest. Accordingly, the undersigned recommends Plaintiff's cause of action for discrimination be denied and dismissed.

### 3. Breach of Confidentiality Claim

Southern Health Defendants maintain that Plaintiff has no evidence or legal basis for his breach of confidentiality claim. ECF No. 80-2. In his Complaint, Plaintiff alleges that he had no privacy when he went to medical services while at DCDC. ECF No. 10-5 at 7. Additionally, Plaintiff maintains that he was escorted to medical on several different occasions, "and each time [he] was subjected to shame as the nurse on duty blurted out all [his] medical issues directly in front of the escorting officer." *Id.* Plaintiff contends that DCDC did not honor his rights regarding privacy on medical issues by asking him personal medical questions while an officer was within three feet of the conversation. *Id.*

Southern Health Defendants argue that a § 1983 claim must allege a violation of a constitutional right or law. ECF No. 80-2 at 12. Moreover, Southern Health Defendants maintain that no court has recognized an inmate's constitutional right to privacy in medical treatment. *Id.* Alternatively, Southern Health Defendants argue that Plaintiff has failed to put forth any evidence that Defendant Shelton ever revealed any specific medical information. *Id.* at 12-13.

15

The undersigned finds that inmates do not have a constitutional right to medical privacy. *See e.g., Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 736 (E.D.N.C. 2013) ("As for plaintiffs' Fifth Amendment claim that they have been denied a constitutional right to privacy in medical treatment, the Supreme Court has never held that an inmate has a constitutional right to privacy in medical treatment."); *Rollins v. Miller*, No. 1:12-CV-298-RJC, 2012 WL 4974966, at *2 (W.D.N.C. Oct. 17, 2012) ("[N]either the U.S. Supreme Court nor the Fourth Circuit has ever recognized a constitutional right in the privacy of prisoners' medical records."); *Sherman v. Jones*, 258 F. Supp. 2d 440 (E.D. Va. 2003) ("[T]here is no general fundamental constitutional right to privacy in personal medical information."); *Adams v. Drew*, 906 F. Supp. 1050, 1058 (E.D. Va. 1995) ("Absent clear authority from the Fourth Circuit or the Supreme Court, this court does not find as a matter of law, under the facts of this case, that a constitutional right to privacy of medical information exists."). Accordingly, the undersigned recommends dismissing Plaintiff's allegations related to right to privacy in medical records for failure to state a claim upon which relief can be granted.[1]

B.  DCDC Employees' Motion for Summary Judgment

Defendants Miers, Van Doran, Darling, Branch, and Taylor ("DCDC Defendants") argue they are entitled to summary judgment based on Eleventh Amendment Immunity and qualified immunity. ECF No. 79-1 at 6-13. As an initial matter, the undersigned finds that to the extent Plaintiff raised § 1983 due process or discrimination claims against DCDC Defendants that these

---

[1] Based on the undersigned's recommendation concerning Southern Health Defendant's first three arguments, it is not necessary to address Southern Health Defendant's arguments four and five. ECF No. 80-2 at 14-15. Furthermore, Plaintiff did not address or oppose Southern Health Defendant's fourth and fifth arguments in his Response, therefore, he has abandoned them. *See e.g., Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

claims fail as a matter of law for the reasons stated above. Further, Plaintiff consistently maintained that medical staff denied him work detail, not the Detention Center. The only remaining cognizable claim is one for denial of access to courts. Plaintiff also requests certain injunctive relief from the court. The undersigned will address these issues as well as some of DCDC Defendants remaining issues in turn.[2]

     1.  Access to Courts

DCDC Defendants argue that they are entitled to qualified immunity with regard to Plaintiff's indigent status and mail issues. ECF No. 79-1 at 12.

In his Complaint, Plaintiff takes issue with the timeliness of his outgoing mail and whether the court received certain documents. ECF No. 10 at 1-2; 10-1. Though not in the body of his Complaint, some grievances indicate that Plaintiff asked questions and took issue with whether his postage for his legal mail would be debited from his account or whether his legal mail should be sent without charge to Plaintiff based on his indigent status. ECF Nos. 10-2; 10-3.

With regards to Plaintiff's allegations of denial of access to courts concerning his legal mail, the undersigned finds that Plaintiff has failed to make a prima facie case. The right of access to the courts is the right to bring to court a grievance that the inmate wished to present and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996).  In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must

---

[2] DCDC Defendants make several arguments to the court beginning with Eleventh Amendment Immunity. ECF No. 79-1 at 7. Additionally, DCDC Defendants address why each DCDC Defendant is entitled to qualified immunity. *Id.* at 8-13. Rather than examine whether each DCDC Defendant is entitled to qualified immunity, the undersigned will address whether Plaintiff's causes of action survive as a matter of law and then broadly address DCDC's qualified immunity argument.

demonstrate with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989). Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55. The *Lewis* Court reasoned that the requirement that an inmate "show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id.* at 349.

Here, Plaintiff merely maintains that his legal mail should have gone out two days earlier than it did. Plaintiff does not allege or present any evidence that he suffered any specific injury as a result of his alleged denial of access to court. Rather, he alleged only that DCDC staff tried to dissuade him from taking legal action and delayed sending his outgoing mail. ECF No. 10 at 1. Additionally, Plaintiff expressed concern about possible tampering with his legal mail. ECF No. 10-1. However, this court has reviewed all grievances associated with Plaintiff's case, and it does not appear that any grievance or other document was withheld from Plaintiff's legal documents sent to the clerk's office. However, again, Plaintiff has failed to demonstrate that he suffered a specific legal injury from any alleged tampering. *Lewis*, 518 U.S. at 353–55; *see also See Pink v. Lester,* 52 F.3d 73 (4th Cir. 1995) (holding negligent denial of access to the courts is not actionable under § 1983."); *Wise v. Lexington Cnty. Sheriff's Dep't*, No. 4:06-cv-1842-RBH-TER, 2008 WL 551618, at *5 (D.S.C. Feb. 26, 2008) *aff'd*, 283 F. App'x 155 (4th Cir. 2008) ("Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts.").

Accordingly, the undersigned recommends granting DCDC Defendants' Motion for Summary Judgment concerning Plaintiff's allegations regarding his indigent status and mail

issues because Plaintiff has failed put forth evidence that a genuine issue of material fact for trial exists and because Plaintiff has failed to demonstrate he suffered an actual injury based on Defendants' alleged actions or inactions. *Lewis*, 518 U.S. at 351–52; *Cochran,* 73 F.3d at 1317.

2.   Injunctive Relief

DCDC Defendants argue that DCDC is not non-compliant with any directives from the Department of Justice or is subject to any orders directed toward the South Carolina Department of Corrections. ECF No. 79-1 at 13-14. Further, DCDC Defendants argue that the facility is in compliance with all state and federal laws, and Plaintiff has not presented evidence that "there are any 'DOJ directives' aimed at [DCDC] with which the Center is not in compliance relating to HIV positive inmates." *Id.* at 14. The undersigned agrees. Plaintiff has failed to put forth any evidence that DCDC is not in compliance with a state or federal law. Therefore, the undersigned recommends Plaintiff's request for injunctive relief be denied and dismissed.

3.   Qualified Immunity

DCDC Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. ECF No. 79-1 at 8-13. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the

alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that DCDC Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. DCDC Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that DCDC Defendants be granted qualified immunity.

4. Eleventh Amendment Immunity

DCDC Defendants argue that Plaintiff's action should be dismissed as a matter of law to the extent that they were sued in their official capacity and while acting in their official capacity they are entitled to Eleventh Amendment Immunity. ECF No. 79-1 at 7.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh

Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants were agents or employees of the State of South Carolina when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, DCDC Defendants, in their official capacities, are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against DCDC Defendants in their official capacities be dismissed.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that DCDC Defendants' Motion for Summary Judgment, ECF No. 79, and Southern Health Defendants' Motion for Summary Judgment, ECF No. 80, be granted, and that Plaintiff's case against Defendants be dismissed.

IT IS SO RECOMMENDED.

April 30, 2015                                                    Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached**

**"Notice of Right to File Objections to Report and Recommendation."**